## Case No. 623.

### ATLANTIC GIANT POWDER CO. v. GOODYEAR.

### SAME v. TOWNSEND.

[3 Ban. & A. 161;[1] 13 O. G. 45.]

Circuit Court, D. Massachusetts. Dec., 1877.

PATENTS FOR INVENTIONS — ENJOINING INFRINGEMENT—SUBSTITUTION OF EQUIVALENTS—ENLARGING SCOPE ON REISSUE — COMITY BETWEEN COURTS.

1. The reissued letters patent, No. 5,799, for a compound of nitro-glycerine with an absorbent substance, preferably infusorial earth, are infringed by the use of a mealed powder composed of nitrate of soda, charcoal and sulphur.

[Cited in Atlantic Giant Powder Co. v. Rand, Case No. 626: Atlantic Giant Powder Co. v. Mowbray. Case No. 624.]
[See Atlantic Giant Powder Co. v. Dittmar, 1 Fed. 328.]

─────

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

2. The rule, that when a substitute is used for one ingredient in a patented combination, which substitute has every property and performs every function of the original in the combination, it does not cease to be an equivalent because in addition it does something more and better, recognized.

[Cited in Atlantic Giant Powder Co. v. Rand, Case No. 626; Atlantic Giant Powder Co. v. Mowbray, Id. 624.]

3. The term "inexplosive" in the original patent, was properly omitted in the reissue as being ambiguous and meaning only comparatively inexplosive, or explosive under certain conditions; and such omission, reference being had to the terms of the original specification, did not enlarge the scope of the invention.

[Cited in The Atlantic Giant Powder Co. v. Rand, Case No. 626.]

4. The patent having already been contested and held valid in this court on final hearing, this court will not postpone the granting of a preliminary injunction, merely because another suit is pending on the patent in another circuit.

5. The question of comity between courts of co-ordinate jurisdiction, reviewed.

[In equity. Suits by the Atlantic Giant Powder Company against George A. Goodyear, and against George W. Townsend, to enjoin infringement of reissued letters patent No. 5,799 of patent No. 78,317. Decrees for complainants.]

Browne, Holmes & Browne, for complainants.

Godfrey Morse, for defendants.

SHEPLEY, Circuit Judge. The reissued patent of complainants, No. 5,799, for the invention of Nobel of a new explosive compound, consisting of a combination of nitro-glycerine with infusorial earth, or other equivalent substance, was fully considered by this court in the case of Atlantic Giant Powder Co. v. Mowbray, [Case No. 624.] In that case the reissued patent was fully sustained as valid, and as not claiming in the reissue any invention different from the one substantially set forth and suggested in the original. The question presented in this case is, whether the pulverulent powder compounded of the usual proportions of nitrate of soda, charcoal and sulphur, as used in the "Vulcan blasting-powder," in combination with nitro-glycerine, is, for the purposes of and in that combination, the equivalent of "the substance" described in the Nobel patent, which "possesses a great absorbent capacity, and which, at the same time, is free from any quality which will decompose, destroy, or injure the nitro-glycerine, or its explosiveness," thus, when combined with nitro-glycerine, forming out of the two ingredients "a composition which, without losing the great explosive power of nitro-glycerine, is very much altered as to its explosive and other properties, being far more safe and convenient for transportation, storage, and use than nitro-glycerine." The preferred form of this substance, as described by Nobel, was the kieselgurgh, or infusorial earth. The substance used by defendants, in combination with nitro-glycerine, is a mealed powder of nitrate of soda, charcoal and sulphur, in proportions the same as in some gunpowder in common use in granular form. This substance has in the combination "a great absorbent capacity," and it is "free from any quality which will decompose, destroy, or injure the nitro-glycerine or its explosiveness." The compound of this substance with nitro-glycerine, without losing the great explosive power of nitro-glycerine, is far more safe and convenient for transportation, storage and use than nitro-glycerine. It does not appear to be contended that the substance itself used by defendants does not possess, in the combination, every property claimed for the infusorial earth in the dynamite patent, or that the combination of it with nitro-glycerine, as "Vulcan blasting-powder," does not possess every attribute and property, in a greater or less degree, possessed by dynamite.

The contention of defendants is, that the only object and aim of Nobel's invention, as patented, was to render nitro-glycerine safer in handling and transportation; that there was no intent to augment its explosive force; that, on the contrary, the solid substance exerted no influence and remained as inert matter, while the object of the manufacturer of the Vulcan powder is stated to be "to render the explosion and combustion of gunpowder instantaneous." That this is not the sole or principal object of the combination is perfectly evident. If the only object of the combination be "to render the explosion and combustion of gunpowder instantaneous," why begin the process by substituting for the granular gunpowder, so highly explosive, a mealed powder of the same ingredients in a pulverulent state, and of a lower degree of explosiveness than grained powder? As nitro-glycerine has eight or ten times the explosive force of the same quantity of gunpowder, as it explodes under proper conditions much more rapidly and instantaneously than gunpowder, the object of the compound is, manifestly, not merely to get an instantaneous explosion and combustion of the gunpowder, but primarily to effect an explosion, the operative effect of which is principally due to the nitro-glycerine in the compound, although augmented in some degree by the gas generated by the explosion of the powder. If the purpose be merely, by means of the nitro-glycerine, to effect instantaneous combustion of the powder, why is the ingredient of sulphur introduced, whose only function is to facilitate ignition—a purpose better accomplished by the nitro-glycerine itself? The real question in the case is more truly stated as follows: Does the substitution of gunpowder, as used in the Vulcan powder in combination with nitro-glycerine, in the place of the infusorial earth or other absorbent described by Nobel, make the combination a different and not an equivalent

compound, because when gunpowder is used as an absorbent, in addition to fulfilling every condition and performing every function of the absorbent in the dynamite compound up to the time of the explosion, and at that time, it then has the additional function of co-operating, by means of its conversion into gas, with the nitro-glycerine in rending the rock, instead of remaining, like the infusorial earth, an inert substance?

The mica powder of Mowbray was held to be an equivalent of the dynamite, and to be subordinate to the dynamite patent, although the mica scales of Mowbray, while possessing all the properties which render the infusorial earth efficient and useful in the compound, had additional properties of greater elasticity and resiliency, and although the nitro-glycerine used by him and prepared by his process was much more effective than the less highly nitrated, nitro-glycerine known to Nobel at the date of his invention. The books are full of cases proving that when a substitute is used for one ingredient in a patented combination which has every property and performs every function of the original in the combination, it does not cease to be an equivalent because in addition it does something more and better.

The equities in Mowbray's case were much stronger than in this case. For Mowbray, although not the first and original, but a subsequent inventor, was in fact an independent inventor of the substance of the Nobel invention, and he also made a subsidiary invention, an improvement-on the dynamite invention. In the present case there is no evidence of a combination of nitro-glycerine with gunpowder as an absorbent before the invention of Nobel, or even before it was used by the owners of the Nobel patent, as one of the modes of using and embodying his invention. The defendants rely upon the position assumed by them that, as gunpowder is an explosive of itself, the use of it in the combination is open to them, as the assignees of Nobel are claimed by them to be limited by the terms of their patent to a non-explosive substance as the absorbent. At the hearing on this motion the argument was strenuously and forcibly presented to the court that Nobel described his absorbent as an "inexplosive" substance, and that if the omission of the term "inexplosive" in the reissue enlarges the scope of the invention, the reissue itself is void; and that if the reissue is to be construed in connection with the original, and for the same invention, it must be limited to the use of absorbents as equivalents which are inexplosive. This position of the defendants is entitled to careful consideration.

In Russell v. Dodge, 93 U. S. 460, in delivering the opinion of the supreme court of the United States, Mr. Justice Field says: "The change made in the old specification, by eliminating the necessity of using the fat liquor in a heated condition, and making in the new specification its use in that condition a mere matter of convenience, and the insertion of an independent claim for the use of fat liquor in the treatment of leather generally, operated to enlarge the character and scope of the invention. The evident object of the patentee in seeking a reissue was not to correct any defects in specification or claim, but to change both, and thus obtain, in fact, a patent for a different invention. This result the law, as we have seen, does not permit." See, also, Seymour v. Osborne, 11 Wall. [78 U. S.] 544. The reissue in this case is not invalid according to the principles of law as stated in Russell v. Dodge, [supra,] and Seymour v. Osborne, [supra.] The word "inexplosive" is applied in the original patent as a term of description to a substance only preferentially used. The other descriptions in the specification clearly apply to substances which in one sense may be explosive, but are inexplosive as compared with nitro-glycerine. The word "inexplosive" appears clearly to have been used in the original patent to describe substances which, as compared with nitro-glycerine, were inexplosive by concussion, which would not, of themselves, explode under those conditions which rendered nitro-glycerine so dangerous and unsafe for practical use, and which, inexplosive of themselves under those conditions, when combined with nitro-glycerine, would make the combination a compound which would also be inexplosive except under such conditions as were not inconsistent with substantial safety in its use for blasting and similar purposes. In this sense the mealed powder used by the defendants is inexplosive. It prevents, by the interposition of its particles, the explosion of the nitro-glycerine by any such concussion as would ordinarily explode it when uncombined with an absorbent. It makes the compound practically inexplosive under ordinary fortuitous and accidental concussions, and practically explosive only under predetermined and prearranged conditions. The word is omitted in the reissue, and we think properly omitted, not for the purpose of including equivalents which were not within the scope of the original invention as described, but as an ambiguous expression not consistent with the other words in the specification which clearly describe the absorbent, its properties and functions, all of which properties and functions, it is evident, from a reading of the original patent, might appertain to a substance explosive under some conditions, but inexplosive under those conditions which made nitro-glycerine explosive by concussion, and dangerous and unsafe for practical use.

The conclusion, therefore, I think is a legitimate one, that under the reissued patent the owners of the patent are not limited to treat as infringements the use of such equivalents only as are actually inexplosive, but they are entitled to the exclusive use of such equiva-

lents as are inexplosive as compared with nitro-glycerine, and which, while complying with the other requisites of the infusorial earth in the combination, will, also, when combined with nitro-glycerine, form out of the two ingredients a composition which, without losing the great explosive power of nitro-glycerine, is more safe and convenient for transportation, storage and use than nitro-glycerine.

The objection is taken by the counsel for the defendants to the granting of a preliminary injunction by this court in the cases now before the court, for the reason that an action has been pending for two years and upward in the circuit court for the second circuit, in which the same questions are involved, and that no effort has been made to prosecute such action, or to obtain a preliminary injunction. It is proved that this action is pending in the circuit court for the second circuit. It is urged that the courtesy usually observed by one court toward another court of equal jurisdiction should deter this court from the exercise of its power to grant a preliminary injunction till that case, which was first originated in the other tribunal, should be finally brought to trial and decided by the court.

A consideration of the condition of this litigation in the respective courts will show that there is no foundation for this objection, and no ground for contending that the exercise of the jurisdiction of this court over the subject-matter would involve any want of courtesy to the court in which the other action is pending. It is to be observed, in the first place, that the Nobel patent, under which this litigation arises, has been made the subject of litigation in this circuit, and that the Nobel patent, after a long and patient and exhaustive examination and argument by able counsel, and a hearing of the testimony of the most competent experts, has been adjudicated to be valid. The foundation, therefore, has been laid in this circuit for a motion for a preliminary injunction. The patent itself having been sustained after a litigation closely contested and free from any pretence of collusion or of any neglect to properly raise and and ably present any issues which could be raised in defence, there is good ground upon which the party complainant can urge with more force its motion for the preliminary injunction in this circuit, in which the validity of the patent itself has been sustained, in which the principal questions arising in this case, as well as in others in relation to the validity of the reissue, have been fully tried and determined.

If such had not been the case in this circuit, and if there were a case pending in another circuit court of the United States involving the validity of this patent which had not been adjudicated upon in this circuit, and that case had progressed to a final hearing and was before the court for adjudica-tion in such other circuit, this court, in the exercise of proper courtesy toward other tribunals of concurrent jurisdiction, would probably decline to hear a motion for a preliminary injunction, and would certainly decline to adjudicate upon it, under ordinary circumstances, without awaiting the decision of such other circuit court before which the case was pending for adjudication after a final hearing.

It would seem to follow that in this court, in which there has been such adjudication after a final hearing and a determination upon the validity of the patent, was the place, and peculiarly the proper place, to make the motion for a preliminary injunction, and that the exercise of its jurisdiction involves clearly no want of courtesy to any other tribunal in which such case has not reached a final hearing, and in which the testimony does not appear to have been taken. The injunctions, therefore, in these cases must issue against the defendants in the usual form.

[NOTE. Patent No. 78,317, was granted May 26, 1868, to A. Nobel, and reissued March 17, 1874, No. 5,799. For other cases involving this patent. see note to Atlantic Giant Powder Co. v. Mowbray, Case No. 624.]